UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
NORMAN MAURICE ROWE, M.D.,
M.H.A., L.L.C. and EAST COAST
PLASTIC SURGERY, P.C.,

                Plaintiffs,

    -against-

AETNA HEALTH AND LIFE
INSURANCE CO.,

                Defendant.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-4870 (NRM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiffs Norman Maurice Rowe, M.D., M.H.A, L.L.C. and East Coast Plastic Surgery, P.C. (together, "Plaintiffs" or the "Providers"), initiated this action on July 12, 2022, against Defendant Aetna Health and Life Insurance Company ("Defendant" or "Aetna") in New York state court. *See generally* Compl., ECF 1-1. On August 17, 2022, Defendant filed a notice of removal, removing the case to the United States District Court for the Eastern District of New York. *See* Notice of Removal, ECF 1, at ECF p. 1. On May 21, 2025, Plaintiffs filed an amended complaint. Am. Compl., ECF 32. In the amended complaint, Plaintiffs bring claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement against Defendant related to a claim for reimbursement for healthcare services provided by Plaintiffs to a patient. *Id.* ¶¶ 15–17.

Presently before the Court is Defendant's motion to dismiss the amended complaint, which includes a request for sanctions against Plaintiffs and their attorneys. *See generally* Def.'s Mem., ECF 34-4. For the reasons that follow, the Court respectfully

recommends that the motion to dismiss be granted and that Defendant's request for sanctions be denied, without prejudice.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

## I.  Factual Background[1]

This case is one of "over 20 cases pending in the Southern and Eastern [D]istricts of New York" that involve "different representatives from both plaintiffs and defendant."[2] Am. Compl., ECF 32, ¶ 48; *see E. Coast Plastic Surgery, P.C. v. Aetna Health & Life Ins. Co.*, No. 22-CV-5820 (EK) (CLP), 2025 WL 2042529, at *1 (E.D.N.Y. July 21, 2025) ("The plaintiffs have brought more than two dozen similar claims against Aetna in the Eastern and Southern Districts of New York."). According to Plaintiffs' amended complaint, Defendant "insures or administers health plans that [] pay in- and out-of-network healthcare claims from healthcare providers." Am. Compl., ECF 32, ¶ 3. MN[3] is an individual patient enrolled in a health insurance plan provided by the Newark

---

[1] The Court recites the facts as alleged in the amended complaint. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021). Defendant denies these allegations and disputes liability. *See* Def.'s Mem., ECF 34-4, at 2 n.2.

[2] For a more comprehensive overview of many of these cases, see *Rowe Plastic Surgery of Long Island, P.C. v. United Health Care*, No. 23-CV-4541 (JMA) (JMW), 2025 WL 1715445, at *5 & n.10 (E.D.N.Y. May 6, 2025) (providing brief summaries of many of the numerous cases filed by Plaintiffs and their counsel), *report and recommendation adopted*, 2025 WL 2306721 (E.D.N.Y. Aug. 11, 2025).

[3] The Court notes an inconsistency across the various filings. In the original complaint, the patient was referred to as MM. *See generally* Compl., ECF 1-1. In the amended complaint, the patient is referred to as MN. *See generally*, Am. Compl., ECF 32. In the motion to dismiss, Defendant appears to refer to the patient as M.M. Plaintiffs' opposition also refers to the patient as MM in an exhibit. *See* Explanation of Benefits ("EOB"), ECF 35-1, at ECF p. 2 ("Patient Name: M[]M[]"). The Court will follow the amended complaint and refer to the patient as MN. The Court will also assume that references to "M.M." or "MM" in Defendant's and Plaintiffs' motion papers is referring to MN. *See generally* Call Tr., ECF 34-2; Petrozelli Decl., ECF 34-3; Def.'s Mem., ECF 34-4; EOB, ECF 35-1.

Board of Education, with Defendant serving as the claims administrator for the plan. *Id.* ¶ 20; Petrozelli Decl., ECF 34-3, ¶ 2.

Plaintiffs, out-of-network ("OON") medical providers, assert that Defendant uses the phrase "Reasonable and Customary" along "with a percentile (usually the 80 percentile or higher) — an industry-standard term with a well-understood meaning and pricing benchmark" in order to "create the appearance of a binding agreement tied to industry standard data, while secretly intending to pay drastically reduced rates derived from undisclosed, manipulated pricing methodologies." Am. Compl., ECF 32, ¶ 13. Here, Plaintiffs claim that between May and June 2020, through a series of phone calls, Defendant "entered into an oral ad-hoc [sic] agreement" with Plaintiffs. *Id.* ¶ 19. These calls began with a May 13, 2020 phone call between Plaintiffs' employee, Nikita, and Defendant's representative, Jenny.[4] *Id.* ¶ 21; *see* Call Tr., ECF 34-2. During the course of the call, Plaintiffs' employee inquired into MN's reimbursement benefits for an anticipated medical procedure, which has an associated insurance code of 15830:

> JENNY: Okay. You're calling for what benefits for this patient?
> NIKITA: The CPT code is 15830.
> JENNY: Is that a surgery?
> NIKITA: This is going to be surgery, yes. It will be done outpatient in a hospital. And the billing is professional.
> JENNY: Professional. Okay. It's going to be in-network or out-of-network?
> NIKITA: Both, please. We are out-of-network but I want both the in and out-of-network info.
>
> . . . .
>
> NIKITA: Okay. All right. Go ahead with the out-of-network information for me, please.
> JENNY: Yes. For out-of-network the deductible is $200, and the out-of-pocket limit is $5000, that includes all deductible. Once met all deductibles

---

[4] Defendant submitted as an exhibit to its motion to dismiss a certified transcript of the May 13, 2020 call and as discussed *infra*, the Court considers the transcript as integral to the amended complaint. *See generally* Call Tr., ECF 34-2.

no longer apply and it will be covered 70 percent after the deductible. Okay?

NIKITA: Uh-huh. For reimbursement, is it reasonable and customary Medicare rates or fair health?

JENNY: Let me check. It's reasonable and customary, 90 percent.

NIKITA: All right. May I have a reference number for this call, please?

JENNY: Yes. For the reference number that's 5269938569.

Call Tr., ECF 34-2, at 4:2–12, 6:7–22. Following this call, Plaintiffs allege that they engaged in a number of additional communications with Defendant. *See* Am. Compl., ECF 32, ¶¶ 117–19. Specifically, on June 3, 2020, after Plaintiffs had initiated a network exception request with Defendant for the medical services to be rendered to MN, "Aetna orally denied the request to cover the service." *Id.* ¶ 117. Then, also on June 3, 2020, following a peer-to-peer utilization review, "Aetna employee Maria B. orally approved code 15830 for coverage as an out-of-network service . . . and said, in sum and substance, its offer expired December 3, 2020." *Id.* ¶ 118. Furthermore, on June 29, 2020, Plaintiffs "orally confirmed with Aetna that the surgery would be conducted at Hudson Regional Hospital." *Id.* ¶ 119. Thereafter, on June 30, 2020, the Providers performed surgery on MN, including the planned surgery for code 15830, and an additional procedure that was deemed necessary during the surgery, which was billed under code 38531. *See id.* ¶¶ 27, 120.

Based on these communications, Plaintiffs contend that Defendant "made clear, unequivocal representations [to Plaintiffs] to reimburse a specific procedure for patient MN at the 'Reasonable and Customary 90 percent' rate" if the procedure was completed by a specific date. *Id.* ¶ 14. During the phone call on May 13, 2020, Plaintiffs emphasize that in response to a question regarding reimbursement, Defendant stated that the reimbursement "**is** reasonable and customary 90 percent." *Id.* ¶ 21 (emphasis in original).

4

According to the "Reasonable and Customary 90 percent fee schedule," *id.* ¶ 24, the unit price for MN's procedure, an "excision [of] excessive skin and subcutaneous tissue," *id.* ¶ 20, was $60,000. Two surgeons performed MN's surgery; during the procedure, they also determined that a biopsy for a lymph node was necessary, which had an associated fee on the schedule of $3,784. *Id.* ¶¶ 26–27. In total, Plaintiffs assert that "the total reasonable cost for the service rendered was $72,710.34." *Id.* ¶ 28. However, after the procedures, Defendant "reveal[ed] that it would reimburse a fraction of the promised amount — less than five percent." *Id.* ¶ 14. Specifically, when Plaintiffs submitted their invoices of the medical procedures to Defendant for payment, Defendant recognized that Plaintiffs "properly performed and met all conditions for payment" and yet "issued payments totaling $3,047.80."[5] *Id.* ¶¶ 33–34. As justification, Plaintiffs represent that Defendant communicated that "the member's plan provides for coverage for charges that are reasonable and appropriate, [and] this procedure was paid at 50 percent of the reasonable and customary rate due to multiple procedures being performed on the same day." *Id.* ¶ 36. At the same time, Plaintiffs allege that Defendant represented that MN's "plan provides benefits for covered expenses at the prevailing charge level made for the service in the geographical area where it is provided." *Id.* Accordingly, Plaintiffs aver that Defendant "reneged on its offer" to Plaintiffs to pay the

---

[5] Plaintiffs submitted as an exhibit to their opposition to the motion to dismiss an Explanation of Benefits ("EOB") and, as discussed *infra*, the Court considers the EOB as incorporated by reference into the amended complaint. *See* footnote 7, *infra*. The Court notes, however, that while the amended complaint asserts that Defendant issued "payments totaling $3,047.80" for MN's procedure, the EOB provided reflects a total payment of $4,922.53. *Compare* Am. Compl., ECF 32, ¶ 34 *with* EOB, ECF 35-1, at ECF p. 2.

"Reasonable and Customary 90 percent" after Plaintiffs relied on Defendant's representation and performed the procedure. *Id.* ¶¶ 38–39.

Plaintiffs assert that this case is one of many in which Defendant engaged in misleading communications with out-of-network providers, "leading them to reasonably believe that they will be compensated at fair market rates while [Defendant], in actuality, has no intention of paying fair market rates" pursuant to the FAIR Health Benchmark Databases[6] or other reliable sources of geographic pricing data. *Id.* ¶¶ 51, 63. Here, Plaintiffs allege that the phone conversation between Plaintiffs and Defendant regarding coverage for MN's procedure bears a "striking similarit[y]" to "the over 20 cases pending in the Southern and Eastern [D]istricts of New York despite involving different representatives from both plaintiffs and defendant." *Id.* ¶ 48. Plaintiffs allege that these similarities "indicate and evince a deliberate pattern, practice, and instruction by Aetna to induce out-of-network (OON) providers into agreements [with] Aetna by intentionally scripting the use of 'reasonable and customary' even though Aetna stopped using 'Reasonable and Customary' well before 2020." *Id.* Plaintiffs contend that in all of these cases, "Aetna assured [Plaintiffs] that they would be reimbursed using a percentile of the reasonable and customary fee schedule, a representation that served as the foundation for [Plaintiffs'] agreement to perform the medically necessary surgeries." *Id.* ¶ 49. Yet, ultimately, "Aetna engages in a standardized script or policy in its communications with OON providers, leading them to reasonably believe that they will

---

[6] According to the amended complaint, the FAIR Health Database is a "publicly available independent database of claims information contributed by payors nationwide, which provides the cost of care in geographic areas and insurance reimbursement." Am. Compl., ECF 32, ¶ 43. The database "serves as the standard for determining allowable amounts for OON services." *Id.* ¶ 45.

be compensated at fair market rates while Aetna, in actuality, has no intention of paying fair market rates." *Id.* ¶ 51. As a result of these practices, Plaintiffs allege that they were harmed and induced to rely on Defendant's false promise while Defendant obtained an economic benefit. *See generally* Am. Compl.

Based on these allegations, Plaintiffs assert four causes of action against Defendant. First, Plaintiffs bring a claim for breach of contract based on the May 13, 2020 call, as well as the subsequent communications, for reimbursement for MN's procedure. *Id.* ¶¶ 18–70. Second, Plaintiffs allege unjust enrichment against Defendant for the pricing of the services rendered to MN. *Id.* ¶¶ 71–103. Third, Plaintiffs assert a claim for promissory estoppel similarly stemming from the series of conversations between Plaintiffs and Defendant. *Id.* ¶¶ 104–26. Finally, Plaintiffs bring a claim for fraud against Defendant by asserting that Defendant made deliberate misrepresentations in the various conversations between the parties. *Id.* ¶¶ 127–40.

## II.  Procedural History

On July 12, 2022, Plaintiffs initiated this action by filing a complaint in the Supreme Court of the State of New York in Queens County. Notice of Removal, ECF 1, ¶ 1; *see generally* Compl., ECF 1-1. On August 17, 2022, Defendant filed a notice of removal, removing the case from state court to this District. *See* Notice of Removal, ECF 1. On October 7, 2022, Defendant filed an answer to Plaintiffs' complaint. Answer, ECF 8. Following a conference with the court, on October 25, 2022, the court set a discovery schedule. *See* Oct. 25, 2022 ECF Scheduling Order. After proceeding with discovery, the parties filed a joint motion to stay discovery for 60 days "so that the parties can devote their full attention towards exploring a global resolution of this case and thirteen (13) other substantively similar cases between the parties currently pending in this District." Letter Mot., ECF 12, at 1. On December 19, 2022, the court granted the motion to stay

and revised the discovery deadlines. *See* Dec. 19, 2022 ECF Order. After additional extensions of the discovery schedule, the case was assigned to arbitration. *See* May 23, 2023 ECF Order; July 28, 2023 ECF Order; Aug. 29, 2023 ECF Notice Designating Case to Arb. & Notice of Arb. Hr'g. However, on September 22, 2023, the parties submitted a letter indicating that they did not agree with the referral of this case to arbitration. *See* Joint Letter Regarding Arb., ECF 21. Accordingly, the court set a revised discovery schedule. *See* Sept. 27, 2023 ECF Order. However, on January 29, 2024, the case was stayed pending the decisions by the Second Circuit on appeals in related cases. *See* Jan. 29, 2024 ECF Order. These appeals have since been decided by the Second Circuit. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.* ("*Park Ave.*"), No. 23-1134-cv, 2024 WL 2813721 (2d Cir. June 3, 2024) (summary order); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe II*"), No. 23-8083-cv, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order).

The stay was lifted on October 15, 2024. *See* Aug. 20, 2024 ECF Order (providing the stay would automatically be lifted on October 15, 2024). On October 29, 2024, Plaintiffs filed a request to amend their complaint and on January 24, 2025, Defendant requested a pre-motion conference to file a motion for judgment on the pleadings. *See* Pls.' Letter, ECF 29; Def.'s Letter, ECF 30. On May 7, 2025, the Honorable Nina R. Morrison directed Plaintiffs to file an amended complaint by May 21, 2025, and waived the pre-motion conference requirement for Defendant's proposed motion. *See* May 7, 2025 ECF Order. On May 21, 2025, Plaintiffs filed their amended complaint and on June 4, 2025, Defendant filed their motion to dismiss for failure to state a claim. *See* Am. Compl., ECF 32; Mot. to Dismiss, ECF 34. Plaintiffs filed their opposition to the motion to dismiss on June 18, 2025, and Defendant filed their reply on June 25, 2025. *See* Pls.' Opp'n, ECF 35; Def.'s Reply, ECF 36. On October 20, 2025, Judge Morrison referred

8

Defendant's motion to dismiss to the undersigned Magistrate Judge. *See* Oct. 20, 2025 ECF Order Referring Mot.

## DISCUSSION

### I.  Legal Standard: Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations"); *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). At the motion to dismiss stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court does not "weigh the evidence that might be presented at trial but merely . . . determine[s] whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quotation marks omitted).

In addition, although the scope of review for Rule 12(b)(6) motions is generally limited to the complaint, courts may consider "'documents incorporated in [the complaint] by reference' and documents which are 'integral to plaintiff['s] claim.'" *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at \*5 (E.D.N.Y. Sept. 23, 2021) (alterations in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (reviewing on a 12(b)(6) motion to dismiss "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)).[7]

As numerous courts have found in the similar cases filed in this District and the Southern District, and as the Second Circuit has approved, the Court finds that the May 13, 2020 call transcript is integral to the complaint as Plaintiffs "so heavily rely on the call terms in making their allegations"; therefore, the call transcript, submitted as an exhibit to Defendant's motion to dismiss, may be properly considered in the context of this motion to dismiss. *Rowe II*, 2024 WL 4315128, at \*2 (finding that "the transcript is easily determined to be integral to the Amended Complaint and may be considered at

---

[7] Here, Plaintiffs provide a number of exhibits along with their opposition to Defendant's motion to dismiss. Among these exhibits are a copy of an EOB provided by Aetna to MN and state court decisions. Turning first to the state court decisions, while the amended complaint does not appear to rely on these decisions such that they would be considered to be integral or incorporated by reference into the complaint, "the state court decisions are indisputably public records of which the court is entitled to take judicial notice." *Stukes v. City of New York*, No. 13-CV-6166 (NGG) (VVP), 2015 WL 1246542, at \*7 n.9 (E.D.N.Y. Mar. 17, 2015); *see generally* Kearns Decl., Ex. 2 ("State Court Opinions"), ECF 35-2. As to the EOB, Plaintiffs assert that it is "incorporated by reference" into the amended complaint. Kearns Decl., ECF 35, ¶ 4; *see* Am. Compl., ECF 32, ¶ 36 ("Aetna included correspondence that said, *inter alia*, in sum and substance, the member's plan provides for coverage for charges that are reasonable and appropriate, this procedure was paid at 50 percent of the reasonable and customary rate due to multiple procedures being performed on the same day."). The Court concludes that it may properly consider the EOB as it is incorporated by reference in the amended complaint.

the motion to dismiss stage" and that "the district court did not err in considering" the transcript); *see, e.g.*, *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe III*"), No. 23-CV-3632 (SJB) (LKE), 2025 WL 1940325, at *7 (E.D.N.Y. July 15, 2025) (concluding that the call transcript was incorporated by reference in the complaint); *Rowe v. Aetna Life Ins. Co.*, No. 23-CV-8512 (LLS), 2025 WL 2644203, at *1 (S.D.N.Y. Sept. 15, 2025) ("The Court will also consider a call transcript submitted by defendants because the representations made on the call are the basis for this lawsuit."); *see also* Call Tr., ECF 34-2, at 1–8.

## II. Analysis[8]

### A. Breach of Contract

Plaintiffs' first cause of action asserts a breach of contract. In *Rowe II*, the Second Circuit reviewed the district court's ruling on a motion to dismiss a very similar claim

---

[8] Many of the other courts evaluating the various similar cases brought by Plaintiffs in this District and the Southern District have found that the Employee Retirement Income Security Act of 1974 ("ERISA") preempted the state law claims. *See, e.g.*, *Rowe v. Aetna Life Ins. Co.*, No. 23-CV-8297 (LGS), 2025 WL 2644190, at *2–3 (S.D.N.Y. Sept. 15, 2025) (finding state law claims were preempted under ERISA as expressly stated in the plan); *see also Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe III*"), No. 23-CV-3632 (SJB) (LKE), 2025 WL 1940325, at *3–6 (E.D.N.Y. July 15, 2025) (same). Under Section 514(a) of ERISA, "any and all State laws insofar as they may now or hereafter relate to any employment benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title" are preempted. 29 U.S.C. § 1144(a); *see Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.* ("*Park Ave.*"), No. 23-1134-cv, 2024 WL 2813721, at *2 (2d Cir. June 3, 2024) (summary order) ("ERISA Section 514(a) provides that ERISA supersedes or preempts all state laws insofar as they 'relate to any employee benefit plan.'" (quoting ERISA § 514(a), codified at 29 U.S.C. § 1144(a)) (concluding that "because any legal duty [the insurance company] has to reimburse [the medical provider] arises from its obligations under the patient's ERISA plan, and not from some separate agreement or promise, [the medical provider's state law] claims are expressly preempted by ERISA § 514(a)").

brought by Plaintiff Norman Maurice Rowe, M.D., M.H.A., L.L.C. (along with another plaintiff) against Defendant Aetna. *See generally Rowe II*, 2024 WL 4315128. As observed by the Second Circuit, "[u]nder New York law, the first element of a breach of contract claim is the existence of a contract." *Id.* (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of NY*, 375 F.3d 168, 177 (2d Cir. 2004)). Additionally, "[a] valid contract requires 'an offer, acceptance, consideration, mutual assent, and an intent to be bound.'" *Id.* (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). Importantly, an offer must be "sufficiently definite such that its unequivocal acceptance will give rise to an enforceable contract." *Id.* (quotation marks and alterations omitted).

In support of their breach of contract claim, Plaintiffs assert that they "entered into an oral ad-hoc [sic] agreement [with Defendant] during a series of phone calls between May 13, 2020, and June 30, 2020." Am. Compl., ECF 32, ¶ 19. More specifically, the "agreement was made to benefit MN" in preparation for MN's forthcoming medical procedure and, according to Plaintiffs, Defendant represented that "the reimbursement '**is** reasonable and customary 90 percent.[']" *Id.* ¶¶ 20–21 (emphasis in original). Plaintiffs assert that the parties "reached an agreement" regarding the following "material terms" of Defendant's "offer": price, the surgeons that would perform the

---

Here, Defendant does not contend that ERISA preempts Plaintiffs' claims. *See generally* Mot. to Dismiss, ECF 34; *see infra* note 11. Nevertheless, the Court notes that according to the declaration of Elizabeth C. Petrozelli provided as an exhibit to Defendant's motion, "based on Aetna's business records, patient M.[N]. was enrolled in a health benefits plan sponsored and funded by Newark Board of Education" and "Aetna was the claims administrator for the Plan." Petrozelli Decl., ECF 34-3, ¶ 2. However, as discussed in more detail in footnote 11, *infra*, MN's insurance plan was not provided for the Court's consideration and does not factor into the Court's analysis of the present motion to dismiss. Accordingly, the Court concludes that an analysis of preemption under ERISA is premature at this stage. *Cf. Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe I*"), 705 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2023) (finding that an ERISA preemption analysis was premature because "there is no proper evidence before the Court that [the patient's] plan is governed by ERISA"), *aff'd*, No. 23-8083-cv, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order).

medical procedure, the location of the surgery based on these communications, and "the expiration of Aetna's offer to reimburse the surgery." *Id.* ¶ 32.

However, as numerous courts have observed in the multiple similar cases across this District and the Southern District, the call transcript tells a markedly different story.[9] Rather than creating an agreement between the parties, the call transcript "reflects an ordinary inquiry concerning benefits coverage for a particular patient — not an offer made by Aetna relied upon [by] Plaintiffs." *Rowe III*, 2025 WL 1940325, at *8. During the course of the May 13, 2020 call, Plaintiffs' employee asks whether, for out-of-network providers, reimbursements are determined through "reasonable and customary Medicare rates or fair health." Call Tr., ECF 34-2, at 6:14–16. In response, Defendant's representative responded that for out-of-network providers, "it's reasonable and customary, 90 percent." *Id.* at 6:17–18.

Plaintiffs' assertion that this conversation, in which Defendant's representative communicated the reimbursement rate of "reasonable and customary, 90 percent," constituted an offer was rejected in *Rowe II* and subsequent cases. In *Rowe II*, the Second Circuit found that the allegations "f[e]ll short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty" when evaluating a similar transcript in which the Defendant's representative in that case stated the reimbursement rate would be 80 percent reasonable and customary. 2024 WL 4315128, at *3. Likewise, here, "the lack of definiteness eliminates any uncertainty as to what a reasonable factfinder would

_____

[9] As discussed above, the Court may properly consider the call transcript in its evaluation of the motion to dismiss as it is integral to Plaintiffs' complaint.

conclude about whether this conversation created an actionable offer" by Defendant. *Id.*; *see also Rowe I*, 705 F. Supp. 3d at 203 ("No reasonable person would understand that representation to be an offer or promise to pay a particular amount to plaintiffs.") (citing *TML Recovery, LLC v. Humana, Inc.*, No. SACV 18-00462 AG (JDEx), 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay.") (internal quotation marks omitted)).

Plaintiffs attempt to distinguish this case from *Rowe I* by asserting that "the pleadings allege a course of communication, which provide context to the single phone call[.]" Pls.' Opp'n, ECF 35-3, at 6; *see* Am. Compl., ECF 32, ¶ 29 ("The oral communications between [t]he Providers and Aetna starting May 13, 2020, and ending June 30, 2020, [] establish a course of communications between the parties during which they had a meeting of the minds[.]"). However, Plaintiffs' allegations regarding these subsequent communications do not demonstrate that these other calls differ materially from the conversation provided in the transcript such that a true contract was formed. *See* Am. Compl., ECF 32, ¶¶ 117 ("Aetna orally denied the request to cover the service"), 118 ("Aetna employee Maria B. orally approved code 15830 for coverage as an out-of-network service . . . and said, in sum and substance, its offer expired December 3, 2020), 119 (Plaintiffs "orally confirmed with Aetna that the surgery would be conducted at Hudson Regional Hospital"). These subsequent communications are all "different versions of benefit verification (or preauthorization) phone calls, not definite offers or promises to pay." *Rowe III*, 2025 WL 1940325, at *8 (holding that allegations of subsequent phone calls failed to establish a contract). In addition, in the absence of a contract for reimbursement being formed in the first call, the subsequent calls do nothing to establish an agreement to pay. Notwithstanding Plaintiffs' efforts to shore up

14

their claim here by relying on the original call and follow-up calls, no reasonable person would understand the calls, taken together, as an offer or promise to pay a particular amount.[10] Accordingly, Plaintiffs have failed to establish their breach of contract claim and the Court respectfully recommends dismissing it for failure to state a claim.[11]

_____

[10] The Court also notes that the text of the call in this case is ambiguous on its face as to what rate the 90 percent reimbursement arguably applies. Notably, Plaintiffs' representative inquires: "For reimbursement, is it reasonable and customary Medicare rates or fair health?" Call Tr., ECF 34-2, at 6:14–16. In response, the Aetna representative states: "reasonable and customary, 90 percent" without indicating whether that rate applies to Medicare rates, FAIR Health, or some other rate. *Id.* at 6:17–18. In context, the more natural reading of this conversation suggests that the 90 percent could apply to Medicare rates while Plaintiffs claim that Aetna promised to pay the "Reasonable and Customary 90 percent" rate, and that "[t]he parties to this phone call understood the industry standard terms to represent the specific service to be performed and a specific rate of reimbursement," without specifying which allegedly agreed-upon fee schedule applied. Am. Compl., ECF 32, ¶¶ 14, 23. Contrary to Plaintiffs' assertion, this transcript does not evidence a meeting of the minds about the rate of reimbursement.

[11] Somewhat confusingly, in their opposition to Defendant's motion to dismiss, Plaintiffs argue for an adverse inference based on Defendant's failure to produce MN's insurance plan (the "Plan"). Plaintiffs contend that Defendant's motion repeatedly notes that any payment obligation must derive solely from the Plan's terms, and payment based on a telephone conversation would create a contract independent from the Plan. *See* Pls.' Opp'n, ECF 35-3, at 14. Plaintiffs go on to assert that "had the Plan truly contained a dispositive disclaimer barring ad-hoc [sic] agreements with out-of-network providers or said the payment rate was 'reasonable and customary 90 percent', [sic] Aetna could, and under Fed R. Civ. P[.] 12 logic, should-have [sic] attached it." *Id.* at 15. Accordingly, Plaintiffs argue that Defendant's omission is "telling" and that the Court may, and in fact should, draw a negative inference. *Id.* The Court is truly puzzled by this portion of Plaintiffs' brief, which references arguments and an alleged quotation in Defendant's brief that do not exist. *See id.* at 14–15. For example, Plaintiffs purport to respond to the "ERISA-pre-emption section" of Defendant's motion to dismiss on page 6, when the only references throughout Defendant's brief to ERISA are contained within descriptions of other cases. *See id.* at 14; Def.'s Mem., ECF 34-4, at 4, 6, 9. In addition, the Court rejects Plaintiffs' request to draw an adverse inference based on Defendant's alleged non-production of the Plan. "At this stage in the proceedings, the Court is assessing the sufficiency of Plaintiff's pleading and is not engaged in weighing evidence." *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 304 n.4 (S.D.N.Y. 2009) (evaluating a motion to dismiss and rejecting the plaintiff's request to draw an adverse inference based on the defendants' alleged spoliation of evidence). Moreover, the Court finds that it is able to reach its conclusions without considering the Plan or any of Defendant's alleged arguments that may rest on the specific terms and conditions found therein.

### B. Unjust Enrichment

Similarly, Plaintiffs fail to sufficiently plead a claim of unjust enrichment. A claim of unjust enrichment permits "a plaintiff [to] recover in quasi-contract against a defendant who 'received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them.'" *New Spectrum Realty Servs., Inc. v. Nature Co.*, 42 F.3d 773, 777 (2d Cir. 1994) (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 197 (1970)). In order to plead a claim of unjust enrichment, the plaintiff must demonstrate that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 36 (2d Cir. 2017). The allegations of the plaintiff must show that the defendant "received some benefit" at "the expense of [the plaintiff]." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotation marks omitted). Additionally, that benefit must be "specific and direct." *Id.* A mere "indirect benefit" will not be enough to support an unjust enrichment claim. *Id.*

Here, Plaintiffs argue that Defendant "obtained a direct and tangible economic benefit" from the work of Plaintiffs through a "notorious" scheme implemented to increase Defendant's "profits by re-pricing OON medical services." Am. Compl., ECF 32, ¶¶ 73, 76. Plaintiffs posit various theories in support of these allegations. Plaintiffs first allege that "[b]y paying less than the represented rate and less than a reasonable value," Defendant generated substantial fees from the savings between Plaintiffs' charges and the lower amounts paid using a shared savings program because the "less Aetna paid [t]he Providers, the more profit Aetna made by charging additional fees on top of its regular monthly fee." *Id.* ¶ 74. Plaintiffs contrast these fees with "the minimal

16

fees that Aetna would have been forced to accept if the services were rendered by a surgeon who was considered a network provider" because in that scenario "Aetna would not have been able to reprice the claims itself or through its Repricing Vendor, and therefore, would not have earned the additional fees through its so-called shared savings programs." *Id.* ¶ 75.

Plaintiffs later allege that Defendant retained a third-party "Pricing Vendor" to devise a scheme to unjustly enrich themselves by "paying Plaintiffs less than the reasonable value of the surgical services" provided to patients, such as MN, "and retaining the benefits as a result." *Id.* ¶ 85. Plaintiffs further assert that Defendant "uses manipulated data it maintains itself or obtains from" the alleged "Pricing Vendor" to determine rates for OON services. Am. Compl., ECF 32, ¶¶ 87–88. As the Honorable Sanket J. Bulsara noted in *Rowe III* when evaluating a similar claim, "[n]one of this makes much sense to the Court, since the . . . Amended Complaint and briefs use a shifting set of terminology and conclusory labels." *Rowe III*, 2025 WL 1940325, at *9. Nevertheless, ultimately the claim "is an allegation that Aetna was unjustly enriched at Plaintiffs' expense, because Aetna received fees and profits when it minimized the reimbursement paid to Plaintiffs." *Id.*

The claim fails. As discussed by the Second Circuit in *Rowe II*, "to recover under a theory of unjust enrichment, the plaintiff must show that the services were performed '*for the defendant*,' and not at the 'behest of someone other than the defendant.'" *Rowe II*, 2024 WL 4315128, at *4 (emphasis in original) (quoting *Kagan v. K-Tel Ent., Inc.*, 568 N.Y.S.2d 756, 757 (App. Div. 1st Dep't 1991)). Here, as in *Rowe II*, Plaintiffs "make no allegations that Aetna requested their services." *Id.* Rather, the medical procedure was performed at MN's request and for MN's benefit. In fact, at one point in the amended complaint, Plaintiffs concede that the alleged contract between Plaintiffs and Defendant

17

"was made to benefit MN who needed billing code 15830." Am. Compl., ECF 32, ¶ 20. *But see* Pls.' Opp'n, ECF 35-3, at 13 ("Here, Aetna benefited from the Providers' services."). Any benefit that may have been obtained by Defendant flowed indirectly from the direct benefit MN received from Plaintiffs' medical services. *See Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit."). This result is well established. In this circuit, "'[i]n the health insurance context, courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds.'" *Rowe III*, 2025 WL 1940325, at *9 (quoting *Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 24-2837-cv, 2025 WL 1443016, at *2 (2d Cir. May 20, 2025) (summary order) (internal quotation marks omitted)). Accordingly, Plaintiffs' "unjust enrichment claim fails for two reasons — Aetna neither benefitted from the Providers' services nor asked the Providers to perform the surgery." *Rowe II*, 2024 WL 4315128, at *3. For these reasons, the Court respectfully recommends dismissing Plaintiffs' unjust enrichment claim against Defendant.

### C. Promissory Estoppel

The amended complaint likewise fails to establish a promissory estoppel claim. For a claim of promissory estoppel, the first element "is a 'clear and unambiguous promise.'" *Id.* at *4 (quoting *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (internal quotation marks omitted)). Importantly, "[a] promise is not 'clear and unambiguous' where the allegations are premised on an ambiguity or where the

18

alleged promise is conditional upon further agreements or negotiations." *Id.* (citing *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)).

Plaintiffs allege that "Aetna assured [t]he Providers that it would use the 'Reasonable and Customary 90 percent' fee schedule to reimburse codes 15830 and 38531 rendered to MN by OON providers." Am. Compl., ECF 32, ¶ 113. Yet, as discussed above, the May 13, 2020 conversation between Plaintiffs and Defendant did not constitute an offer by Defendant to pay Plaintiffs at a clear rate, nor was there any detailed discussion of the two billing codes as to which Plaintiffs seek reimbursement. Accordingly, this conversation cannot be said to be a "clear and unambiguous" promise, or offer, to pay. *Cyberchron Corp.*, 47 F.3d at 44. Moreover, the subsequent conversations between Plaintiffs and Defendant, also discussed above, likewise do not establish that Aetna made any promise to pay. Am. Compl., ECF 32, ¶¶ 116–20. Rather, these conversations simply "involve further discussions about preauthorization and benefits confirmation." *Rowe III*, 2025 WL 1940325, at *9. Therefore, Plaintiffs' allegations "do not plead a clear and unambiguous promise that is actionable under existing law." *Rowe II*, 2024 WL 4315128, at *4. Accordingly, the Court recommends dismissing Plaintiffs' promissory estoppel claim against Defendant.

19

### D. Fraud

Plaintiffs' fourth and final claim is for fraudulent inducement.[12] A claim of fraudulent inducement requires "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quotation marks omitted). Moreover, a fraudulent inducement claim must be pled according to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "'state with particularity the circumstances constituting fraud or mistake.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Fed. R. Civ. P. 9(b)). Importantly, "a fraud claim will not be sustained on a motion to dismiss where the plaintiff is simply using the claim 'as a means of restating what is, in substance, a claim for breach of contract.'" *Rowe II*, 2024 WL 4315128, at *5 (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (internal quotation marks omitted)).

Plaintiffs allege that in the various conversations between the parties, "Aetna deliberately misrepresented a present fact, [that] reimbursement would be at the 'Reasonable and Customary 90 percent' fee schedule" to induce Plaintiffs to perform the surgery for MN while Aetna "had no intention of paying any amount relative to Reasonable and Customary 90 percent." Am. Compl., ECF 32, ¶¶ 128, 132. As a basis for

---

[12] Plaintiffs allege that Defendant "intentionally lied about a present fact" in order to "induce the Plaintiffs to render" medical services to MN. Am. Compl., ECF 32, ¶¶ 129–30. While Plaintiffs do not label this claim as fraudulent inducement in the amended complaint, the elements invoked by the allegations are those for fraudulent inducement, and Plaintiffs describe the claim as such in their opposition to the motion to dismiss. *See id.* ¶¶ 127–40; Pls.' Opp'n, ECF 35, at 9–11; *see also Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Aetna Life Ins. Co.*, No. 23-CV-2596 (GRB) (PK), 2025 WL 3461170, at *4 (E.D.N.Y. Aug. 13, 2025) (construing claim alleging Defendant "intentionally lied about a present fact" in order to "induce the Plaintiffs to render" medical services as a claim for fraudulent inducement).

20

these allegations, Plaintiffs substantially rely on the same set of facts as in their breach of contract claim: that in the communications between Plaintiffs and Defendant's representatives between May 13, 2020, and June 30, 2020, Defendant "lied that its price for [MN's] surgery was the 'Reasonable and Customary 90 percent' fee schedule." *Id.* ¶ 130. As Judge Bulsara observed in *Rowe III*, "[t]he only difference is that in the breach of contract claim, Plaintiffs allege that this statement amounted to an offer to pay; whereas in the fraudulent inducement claim, Plaintiffs allege that Aetna intended to deceive Plaintiffs with the statement." *Rowe III*, 2025 WL 1940325, at *10; *compare* Am. Compl., ECF 32, ¶¶ 29–32 *with id.* ¶¶ 128–30. Plaintiffs' allegations as to its fraudulent inducement claim are therefore "insufficient to allege a misrepresentation 'collateral to' the allegations supporting their breach of contract claim." *Rowe II*, 2024 WL 4315128, at *5. Because Plaintiffs have simply restated their breach of contract claim as a claim for fraudulent inducement, it cannot "be sustained on a motion to dismiss." *Id.* Consequently, the Court respectfully recommends dismissing Plaintiffs' fraudulent inducement claim against Defendant.

### III. Sanctions

Having recommended that all of Plaintiffs' claims against Defendant be dismissed, the Court now turns to Defendant's request for sanctions against Plaintiffs and/or their attorneys. In its motion to dismiss, Defendant requests that the Court impose sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. *See* Def.'s Mem., ECF 34-4, at 27–33.

Under Section 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A district court has the "inherent power to impose attorney's

21

fees as a sanction for bad-faith conduct," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), on any attorney or party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (quotation marks omitted). Importantly, like other sanctions, sanctions under Section 1927 should not be "'assessed lightly or without fair notice and an opportunity for a hearing on the record.'" *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *see also Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 936 (2d Cir. 1992), *abrogated on other grounds by Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000). "An attorney whom the court proposes to sanction 'must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter,' and 'must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.'" *Sakon*, 119 F.3d at 114 (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997)). Further, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1276.

Here, as discussed above by this Court and in multiple similar suits across this District and the Southern District, Plaintiffs' claims are without merit. In fact, as noted by Defendant in its motion to dismiss, at least two courts have warned Plaintiffs that pursuing their litigation campaign may result in sanctions. *See* Def.'s Mem., ECF 34-4, at 32 (citing *Norman Maurice Rowe, M.D., M.H.A., LLC v. Aetna Life Ins. Co.*, No. 23-CV-8527 (CM) (OTW), 2025 WL 692051, at *2 (S.D.N.Y. Mar. 4, 2025) ("Any further effort by Dr.

Rowe, his attorneys of record, or anyone affiliated with him to bring further lawsuits of this nature before this court will be considered sanctionable conduct.")), *appeal withdrawn sub nom. Rowe Plastic Surgery of N.J., L.L.C. v. Blue Cross Blue Shield of N.C.*, No. 25-539-cv, 2025 WL 1625510 (2d Cir. Apr. 23, 2025), and *appeal withdrawn sub nom. Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Aetna Life Ins. Co.*, No. 25-537-cv, 2025 WL 1603002 (2d Cir. Apr. 28, 2025); *Rowe Plastic Surgery of N.J., LLC v. Aetna Health & Life Ins. Co.*, No. 22-CV-7900 (JLR) (OTW), 2025 WL 1000147, at *3 n.7 (S.D.N.Y. Apr. 3, 2025) ("Plaintiffs' and their counsel's approach to these cases raises serious concerns under 28 U.S.C. § 1927.").

These warnings were issued in March 2025 and April 2025, respectively, and Plaintiffs filed their amended complaint in this action in May 2025. While the specific claims regarding patient MN have not been previously adjudicated, based on the wide array of virtually identical suits brought by Plaintiffs in connection with various medical procedures for other patients, Plaintiffs should have known that their claims would fail as a matter of law. *Cf. Vishipco Line v. Charles Schwab & Co.*, Nos. 02-CV-7823, 7846, 7877, 7915, 7928, & 7929 (SHS), 2003 WL 1345229, at *11 (S.D.N.Y. Mar. 19, 2003) ("Based on the prior decisions in state and federal courts, [the plaintiffs' attorney] should have known that the issues and claims presently before this Court would be barred[.]"). Indeed, the Second Circuit's opinion in *Rowe II* arguably foreclosed Plaintiffs' claims here. Given "the unreasonable and vexatious multiplicity of actions filed," it could be inferred that Plaintiffs' actions were "'undertaken for some improper purpose,'" such as harassing Defendant for allegedly owed insurance funds. *Vishipco Line*, 2003 WL 1345229, at *11 (quoting *Oliveri*, 803 F.2d at 1273). However, in the context of this case, Plaintiffs have not been given specific notice of the risk of sanctions or by what standard their conduct will be assessed. *See Sakon*, 119 F.3d at 114. Additionally,

23

the Court notes that Plaintiffs appear to have had some success in state court actions premised on similar claims. *See, e.g.*, State Court Opinions, 35-3, at ECF pp. 8–12 (dismissing Plaintiffs' unjust enrichment claim but denying the defendant's motion to dismiss breach of contract, promissory estoppel, and New York's Prompt Pay Law claim), 13–19 (same, for breach of contract and promissory estoppel), 28–32 (same).[13] Therefore, this Court respectfully recommends that Defendant's request for sanctions be denied on the basis of the present record, without prejudice.

## CONCLUSION

For the reasons discussed herein, the Court recommends that Defendant's motion to dismiss be granted, and that Plaintiffs' claims be dismissed, with prejudice, for failure to state a claim upon which relief can be granted. Additionally, this Court respectfully recommends that Defendant's request for sanctions be denied on the basis of the present record, without prejudice.

*   *   *   *   *

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Nina R. Morrison at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008)

---

[13] As discussed in footnote 7, *supra*, the Court may properly take judicial notice of Plaintiffs' proffered state court decisions as they are publicly available court records. *See Stukes*, 2015 WL 1246542, at *7.

(explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
January 16, 2026

*Taryn A. Merkl*

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE